1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN HARDNEY,                              No.  2:13-cv-0754 JAM DAD P

12                  Petitioner,

13          v.

14   T. VIRGA, Warden,                          FINDINGS AND RECOMMENDATIONS

15                  Respondent.

16

17          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Therein, petitioner challenges the decision of the California Board

19   of Parole Hearings (hereinafter "Board") to deny him parole for ten years at his parole

20   consideration hearing held on November 8, 2011.  The matter has been fully briefed by the parties

21   and is submitted for decision.  Upon careful consideration of the record and the applicable law,

22   the undersigned will recommend that petitioner's application for habeas corpus relief be denied

23   on his due process and ineffective assistance of counsel claims and that his Ex Post Facto claim

24   be dismissed without prejudice.

25   **I. Procedural Background**

26          Petitioner is confined pursuant to a 1987 judgment of conviction entered against him in

27   the Sacramento County Superior Court following his conviction on charges of rape, kidnaping for

28   robbery, sexual battery, and auto theft.  (ECF No. 1 at 1; ECF No. 10-8 at 40; ECF No. 10-1 at

                                             1

71.)  Pursuant to that conviction, petitioner was sentenced to twenty-eight years to life in state prison.  (ECF No. 1 at 1.)

The parole consideration hearing that is placed at issue by the federal habeas petition now pending before this court was held on November 8, 2011.  (ECF No. 10-1 at 69.)  Petitioner appeared at and participated in that parole hearing.  (Id. at 72, et seq.)  He was also represented by counsel at the hearing.  (Id.)  Following deliberations held at the conclusion of that hearing, the Board panel announced their decision to deny petitioner parole for ten years as well as the reasons for that decision.  (ECF No. 10-3 at 12-21.)

Petitioner challenged the Board's November 8, 2011 decision in a petition for writ of habeas corpus filed in the Sacramento Superior Court.  (ECF No. 10-1 at 2.)  He first claimed that the Board's decision to deny him parole for ten years pursuant to California Proposition 9, also known as Marsy's Law, was improper because his initial parole consideration hearing was originally scheduled on a date that preceded the implementation of Marsy's Law.  Petitioner explained that the date for his first parole consideration hearing was originally scheduled for October 6, 2008, but was postponed until November 8, 2011 "for reasons beyond his control" when the Board failed to obtain a "risk assessment/psychological report" prior to the scheduled hearing.  (Id. at 9-11.)  Petitioner argued that the Board's 2011 decision to defer his next parole hearing for ten years under the provisions of Marsy's Law was improper because the Board had "agreed not to apply Prop. 9 at the next hearing for any prisoner who was supposed to have his hearing before December 15, 2008 when the Board implemented Prop. 9."  (Id. at 8-9.)

Petitioner also claimed in his state habeas petition that his counsel at the November 8, 2011 parole suitability hearing was ineffective because he did not discuss petitioner's case with him prior to the hearing, failed to object when the Board relied on prison disciplinary convictions of which petitioner was innocent to deny him parole, failed to provide evidence to challenge petitioner's prison disciplinary convictions, and failed to object to false statements made at the hearing by certain Board members and the Deputy Attorney General about petitioner's suitability for parole and his prior disciplinary record.  (Id. at 11-13, 22-23, 41-43.)

/////

1    Petitioner further claimed that the Board improperly relied on an unreliable prison

2   disciplinary conviction for battery on a peace officer to find him unsuitable for parole, even

3   though he explained to the Board that he was not guilty of that disciplinary offense.  (<u>Id.</u> at 15-

4   19.)  Petitioner claimed that the Board failed to note and consider that a number of his prison

5   disciplinary convictions were later dismissed or reversed.  (<u>Id.</u>)  Petitioner also argued that the

6   Board failed to consider a document that he submitted, which he describes as a "rebuttal" to the

7   "comprehensive risk assessment" completed for the Board's use, in which petitioner challenged

8   the validity of his disciplinary convictions.  Petitioner complained, in general, that the Board did

9   not allow him to present documentation to explain that some of the disciplinary charges brought

10   against him were dismissed and/or not reliable.  (<u>Id.</u>)  Petitioner also claimed that the Board's

11   failure to consider and fully address his written and oral challenges to his prison disciplinary

12   record violated California law and his right to due process.  (<u>Id.</u> at 24, 25, 27, 34-35.)  Finally,

13   petitioner claimed in his state habeas petition that the Board improperly relied on invalid

14   counseling chronos to find him unsuitable for parole.  (<u>Id.</u> at 20-21.)  He also expressed his

15   disagreement with the Board's conclusion that he lacked remorse, blamed the victim for his

16   crimes, and had committed sex crimes while in prison.  (<u>Id.</u> at 26.)

17    The Sacramento County Superior Court denied the habeas petition in a lengthy reasoned

18   decision addressing the merits of petitioner's claims.  (ECF No. 10-8 at 40-51.)  The Superior

19   Court first reviewed numerous exhibits filed by petitioner, which indicated that some of the

20   prison disciplinary convictions on his record had been vacated, dismissed, reversed, reheard,

21   and/or reissued.  (<u>Id.</u> at 40-41.)  With regard to petitioner's disciplinary conviction for battery on

22   a peace officer, the Superior Court noted that, while the evidence was conflicting as to whether a

23   food tray thrown by petitioner actually hit the officer, or whether the officer was hit only by food

24   on the tray, petitioner was ultimately found guilty of the battery disciplinary charge by the

25   hearing officer.  (<u>Id.</u> at 41.)

26    With regard to the scheduling of petitioner's parole suitability hearing, the Superior Court

27   noted the following:

28   /////

3

Exhibit A of the petition consists of a written document dated October 6, 2008, in which petitioner and his attorney made a formal request to the parole board that the parole suitability hearing be postponed for one year, because petitioner did not meet with a psychologist due to a schedule conflict, and petitioner desired a new psychological evaluation before the next parole hearing.

Exhibit A-2 is a document drafted by the Prison Law Office, which appears to be a private legal office staffed by attorneys, making a statement that the parole board began implementing the Proposition 9 version of Penal Code § 3041.5(b)(3), regarding the scheduling of future parole suitability hearings, "effective December 15, 2008. However, the Board agreed not to apply Proposition 9 at the next hearing for any prisoner who was supposed to have his or her hearing before December 15, 2008, but had the hearing postponed by the Board for some reason beyond the prisoner's control, such as needing a new psychological report."

Petitioner also attaches a CDC-128-G form, indicating that petitioner's next parole hearing was scheduled for December 2011, and noting that petitioner had a CDC-128-C from August 12, 2010 and was given an 18-month aggravated security housing unit term for a rule violation of December 2, 2010 for harassment. Petitioner does not attach any documentation showing why his parole suitability hearing was delayed until November 8, 2011, which was three years after the October 2008 request for it to be postponed for only one year.

(Id. at 41-42.)  The Superior Court also noted that, at the November 8, 2011 parole suitability hearing, petitioner:

stated that he was ready to go on parole but that he was not suitable, based on his being in the security housing unit and his CDC-115 disciplinaries.  He stated that he had postponed the parole suitability hearing twice because his CDC-115 disciplinaries had not yet been completely straightened out.

(Id. at 42.)  Finally, the Superior Court pointed to evidence that "in December 2009 petitioner got a two-year waiver, which brought him up to the current hearing."  (Id. at 44.)

With regard to petitioner's record of prison disciplinary convictions, the Superior Court stated:

The board panel noted that petitioner had committed an extraordinary number of CDC-115 serious disciplinary rule violations, including as recently as the last year.  Petitioner responded that a lot of the violations were accurate but a lot were not true.

(Id.)  The Superior Court also noted that the Board Panel had discussed petitioner's history of prison disciplinary convictions at his 2011 parole hearing and that petitioner was allowed to

4

participate in that discussion.  In this regard, the Superior Court explained:

> The board panel noted that petitioner's commitment offense involved sexual crimes, and that 11 of petitioner's CDC-115's were for indecent exposure, which is further sexual crime and further victimization of people.  The board panel also noted that there were incidents of assault on a correctional officer.  Petitioner responded that he did not do the latter, that one officer said that petitioner had thrown a tray at the officer but at the hearing said that the officer was not hit by the tray but was hit by food, but that the hearing officer found him guilty of throwing the tray at the officer.  Petitioner claimed to have discussed this in a rebuttal argument he had written and submitted to the panel, and the panel responded that it was not in the scope of the hearing to go through petitioner's rebuttal of each and every disciplinary, of which there were 45.  The board panel then noted another incident in 2007, in which petitioner stated he was tired of the prison and kicked an officer in the foot, shin, and knee area.  The board panel noted that petitioner was saying one thing but the records are contrary.

> The board panel noted that petitioner wanted to argue about the 115's and prove himself, but that the purpose of the parole hearing was not to rehear any 115 that had been adjudicated.  Petitioner then stated that he was currently in the security housing unit for a harassment charge that had not yet been heard, and the panel elected to move on to another topic.  The panel reiterated that it was not going to retry the commitment offenses, his prior convictions, or any of his 115's received in prison, which speak for themselves.  The panel reiterated that if petitioner had been found guilty of a 115, the panel accepted that, but that petitioner could state that he did not do one or disagreed with one.  If one was reversed, the panel stated it would not consider it.  The panel stated that because petitioner had so many in-prison disciplinaries, removing some of them was not going to change anything because petitioner had created a pattern throughout his incarceration.  The panel noted that petitioner had 15 disciplinaries just in the past five years alone.  Petitioner stated it was crazy because he was in his cell 22 or 23 hours a day and wanted to know how he was getting all these 115's when that was so, and the panel stated that was a question that only petitioner could answer.

> The panel noted at least 45 in-prison disciplinaries for petitioner, and that other sources had come up with 50.  The panel stated that it was a moot point unless something significant was overlooked.  The panel noted that the last disciplinary was on December 2, 2010, for indecent exposure, and that there had been 11 indecent exposures in total.  The panel again noted battery on a peace officer and obstructing a peace officer, and added that there were others involving rights, respects, threats, theft, overfamiliarity, gifts and gratuity, and disobeying orders.  Petitioner responded that these were not accurate and he could prove that they were not accurate, that one 115 was reversed by a court, that harassment did not exist, and that he currently should not be in the security housing unit because he does not have a current 115.  Petitioner stated that he was currently litigating the batteries in court, and stated that the

victim of one of these said that petitioner did not throw a tray at him.  The panel responded that petitioner was found guilty of the latter, and that was the end of it with regard to that particular disciplinary.  Petitioner responded that from 1999 up until the present, there were a lot [of] accusations against him that he did not do.  Petitioner stated that he was not guilty of 20 of the disciplinaries and that he has documentation of that; he would not go so far as to claim innocence on all 45 disciplinaries, however.

(Id. at 44-45.)

The Sacramento County Superior Court observed that "petitioner's attorney spoke [at the 2011 suitability hearing], trying to mitigate the negatives."  (Id. at 48.)  Finally, that court noted that "petitioner spoke, stated he came to the hearing thinking he would not get paroled.  He admitted waiving the hearing twice but did not want to waive a third time because he needed to understand what the hearing is all about."  (Id.)   After an analysis of petitioner's claims, the Sacramento County Superior Court denied his habeas petition in its entirety.

Thereafter, petitioner challenged the Board's 2011 decision denying him parole in a petition for a writ of habeas corpus filed in the California Court of Appeal for the Third Appellate District.  Therein, he raised substantially the same claims he raised in his habeas petition filed in the Sacramento County Superior Court.  (ECF No. 10-6.)  The California Court of Appeal summarily denied that petition.  (ECF No. 10-11.)

On December 10, 2012, petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (ECF No. 10-12.)  It appears that petitioner intended to file the identical petition he had filed with the Superior Court and California Court of Appeal in the California Supreme Court, but inadvertently failed to attach the first half of that petition and the supporting exhibits to his filing.  (Id. at 30.)  On February 21, 2013, petitioner filed the missing portions of his previously filed habeas petition, with the exception of the transcript of the November 8, 2011 parole suitability hearing, and asked the California Supreme Court to "consolidate" all of his petitions and "consider them upon review."  (Id.)  Petitioner also argued in this February 21, 2013 filing with the California Supreme Court that Marsy's Law and its multi-year deferral provision only applied to inmates who had been convicted of murder and therefore should not apply to him.  (Id.)  The California Supreme Court denied petitioner's habeas

6

1   petition, citing the decision in <u>People v. Duvall</u>, 9 Cal.4th 464, 474 (1995) (holding that a habeas

2   petition must state fully and with particularity the facts on which relief is sought and must include

3   copies of reasonably available documentary evidence supporting the claims included therein,

4   including pertinent portions of trial transcripts and affidavits or declarations).  (ECF No. 10-13.)

5           On April 18, 2013, petitioner filed his federal application for habeas relief in this court.

6   **II.  Standards of Review Applicable to Habeas Corpus Claims**

7           An application for a writ of habeas corpus by a person in custody under a judgment of a

8   state court can be granted only for violations of the Constitution or laws of the United States.  28

9   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

10  application of state law.  See <u>Wilson v. Corcoran</u>, ___U.S.___, ___, 131 S. Ct. 13, 16 (2010);

11  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir.

12  2000).

13          Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

14  corpus relief:

15                  An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall not
16      be granted with respect to any claim that was adjudicated on the
        merits in State court proceedings unless the adjudication of the
17      claim -

18                  (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as
19      determined by the Supreme Court of the United States; or

20                  (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
21      State court proceeding.

22          For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings

23  of the United States Supreme Court at the time of the last reasoned state court decision.

24  <u>Thompson v. Runnels</u>, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing <u>Greene v. Fisher</u>, ___ U.S.

25  ___, ___, 132 S. Ct. 38, 44 (2011); <u>Stanley v. Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011) (citing

26  <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in

27  determining what law is clearly established and whether a state court applied that law

28  unreasonably."  <u>Stanley</u>, 633 F.3d at 859 (quoting <u>Maxwell v. Roe</u>, 606 F.3d 561, 567 (9th Cir.

1  2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of

2  Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not

3  announced."  Marshall v. Rodgers, ___ U.S. ___, ___,133 S. Ct. 1446, 1450 (2013) (citing Parker

4  v. Matthews, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be used to "determine whether a

5  particular rule of law is so widely accepted among the Federal Circuits that it would, if presented

6  to th[e] [Supreme] Court, be accepted as correct.  Id.  Further, where courts of appeals have

7  diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal

8  law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77 (2006).

9          A state court decision is "contrary to" clearly established federal law if it applies a rule

10  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

11  precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

12  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

13  writ if the state court identifies the correct governing legal principle from the Supreme Court's

14  decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1]  Lockyer v.

15  Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

16  (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

17  court concludes in its independent judgment that the relevant state-court decision applied clearly

18  established federal law erroneously or incorrectly.  Rather, that application must also be

19  unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

20  (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

21  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

22  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

23  'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

24  Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541

25  U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

26  _____

27  [1]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
28  384 F.3d 628, 638 (9th Cir. 2004)).

8

1   court, a state prisoner must show that the state court's ruling on the claim being presented in

2   federal court was so lacking in justification that there was an error well understood and

3   comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131

4   S. Ct. at 786-87.

5        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

6   court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,

7   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

8   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

9   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

10   de novo the constitutional issues raised.").

11        The court looks to the last reasoned state court decision as the basis for the state court

12   judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

13   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

14   previous state court decision, this court may consider both decisions to ascertain the reasoning of

15   the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

16   federal claim has been presented to a state court and the state court has denied relief, it may be

17   presumed that the state court adjudicated the claim on the merits in the absence of any indication

18   or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. This

19   presumption may be overcome by a showing "there is reason to think some other explanation for

20   the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,

21   803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims

22   but does not expressly address a federal claim, a federal habeas court must presume, subject to

23   rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___,

24   ___, 133 S. Ct. 1088, 1091 (2013).

25        Where the state court reaches a decision on the merits but provides no reasoning to

26   support its conclusion, a federal habeas court independently reviews the record to determine

27   whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

28   Thompson, 336 F.3d 848, 853 (9th Cir 2003). "Independent review of the record is not de novo

1   review of the constitutional issue, but rather, the only method by which we can determine whether

2   a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no

3   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

4   reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784.

5        A summary denial of relief by a state court is presumed to be a denial on the merits of the

6   petitioner's claims.  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal

7   court cannot analyze just what the state court did when it issued a summary denial, the federal

8   court must review the state court record to determine whether there was any "reasonable basis for

9   the state court to deny relief." Richter, 131 S. Ct. at 784.  This court "must determine what

10  arguments or theories ... could have supported, the state court's decision; and then it must ask

11  whether it is possible fairminded jurists could disagree that those arguments or theories are

12  inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 786.  The

13  petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court

14  to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct.

15  at 784).

16       When it is clear, however, that a state court has not reached the merits of a petitioner's

17  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

18  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

19  F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

20  **III.  Scope of Review Applicable to Due Process Challenges to the Denial of Parole**

21       The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives

22  a person of life, liberty, or property without due process of law.  A litigant alleging a due process

23  violation must first demonstrate that he was deprived of a liberty or property interest protected by

24  the Due Process Clause and then show that the procedures attendant upon the deprivation were

25  not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-

26  60 (1989).

27       A protected liberty interest may arise from either the Due Process Clause of the United

28  States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

1    expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221

2    (2005). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States

3    Constitution does not, of its own force, create a protected liberty interest in a parole date, even

4    one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

5    Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

6    person to be conditionally released before the expiration of a valid sentence.") However, a state's

7    statutory scheme, if it uses mandatory language, "creates a presumption that parole release will be

8    granted" when or unless certain designated findings are made, and thereby gives rise to a

9    constitutional liberty interest. Greenholtz, 442 U.S. at 12. See also Allen, 482 U.S. at 376-78.

10        California's parole scheme gives rise to a liberty interest in parole protected by the federal

11   Due Process Clause. Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir.

12   2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v. Cooke,

13   ___ U.S. ___, ___, 131 S. Ct. 859, 861-62 (2011) (finding the Ninth Circuit's holding in this

14   regard to be a reasonable application of Supreme Court authority); Pearson v. Muntz, 639 F.3d

15   1185, 1191 (9th Cir. 2011) ("[Swarthout v.] Cooke did not disturb our precedent that California

16   law creates a liberty interest in parole.") In California, a prisoner is entitled to release on parole

17   unless there is "some evidence" of his or her current dangerousness. In re Lawrence, 44 Cal.4th

18   1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

19        In Swarthout, the Supreme Court reviewed two cases in which California prisoners were

20   denied parole - in one case by the Board, and in the other by the Governor after the Board had

21   granted parole. Swarthout, 131 S. Ct. at 860-61. The Supreme Court noted that when state law

22   creates a liberty interest, the Due Process Clause of the Fourteenth Amendment requires fair

23   procedures, "and federal courts will review the application of those constitutionally required

24   procedures." Id. at 862. The Court concluded that in the parole context, however, "the

25   procedures required are minimal" and that the "Constitution does not require more" than "an

26   opportunity to be heard" and being "provided a statement of the reasons why parole was denied."

27   Id. (citing Greenholtz, 442 U.S. at 16). The Supreme Court therefore rejected Ninth Circuit

28   decisions that went beyond these minimal procedural requirements and "reviewed the state

11

courts' decisions on the merits and concluded that they had unreasonably determined the facts in light of the evidence." Swarthout, 131 S. Ct. at 862.  In particular, the Supreme Court rejected the application of the "some evidence" standard to parole decisions by the California courts as a component of the federal due process standard. Id. at 862-63. See also Pearson, 639 F.3d at 1191.

**IV. Petitioner's Claims**

   **A. Due Process**

   In his first claim for relief, petitioner argues that he was denied the right to present documentary evidence to the Board panel in order to challenge his prison disciplinary convictions, which were relied on by the Board, in part, to find him unsuitable for parole.  (ECF No. 1 at 19.)  Petitioner also argues that the Board refused to consider his written "rebuttal," which contained allegations and evidence concerning the validity of his prison disciplinary convictions.  (Id. at 37-39.)  Petitioner claims that the Board's refusal to "consider petitioner's evidence to explain and/or mitigate the seriousness of the disciplinary record" violated his "procedural rights to a fair hearing."  (Id. at 17.)

   Petitioner also claims, as he did in state court, that: (1) the Board improperly relied on an unreliable disciplinary conviction for battery on a peace officer to find him unsuitable for parole, even though he explained to the Board that he was not guilty of this offense and provided evidence in his written "rebuttal" that this disciplinary conviction was invalid; (2) the Board failed to take into consideration in finding him unsuitable for parole that a number of his prison disciplinary convictions had been dismissed or reversed; (3) the Board failed to consider his written "rebuttal" and did not allow him to present documentation to explain that some of the disciplinary charges brought against him had been dismissed and/or were unreliable; and (4) the Board improperly relied on invalid counseling chronos to find him unsuitable for parole.  (Id. at 24-30.)  Petitioner also repeats his claims raised in state court that at his 2011 parole hearing certain Board panel members and the Deputy District Attorney mischaracterized his prior criminal record, the facts of his crimes of commitment, and prior statements he had made.  (Id. at 30-32.)

1    These arguments were all rejected by the Sacramento County Superior Court in

2    addressing petitioner's habeas petition filed in that court.  Specifically, that court reasoned as

3    follows:

> Petitioner also claims that the parole panel erred in not allowing
> him to present evidence regarding a handful of his plethora of in
> prison disciplinaries, to show that they were or should have been
> overturned.
>
> It is inferable from the exhibits attached to the petition that the
> parole panel was fully aware that petitioner had suffered 45 or 50
> serious in-prison disciplinaries, 15 of which were in the preceding
> five years and 11 of which were for indecent exposure, as well as
> an additional 12 less serious counseling chronos; that petitioner had
> been able to have a handful of them overturned on procedural
> grounds, but that that was a "moot point," as noted by the parole
> panel, in light of the sheer number and nature of the disciplinaries
> that remained, and that it was not the parole panel's place to retry
> guilt on any of them that had not been vacated or reversed, just as it
> was not the parole panel's place to retry guilt on the commitment
> offenses.  Petitioner does not show this was error, nor does he cite
> any authority to support his contention.  As such, the claim fails.
>
> * * *
>
> Petitioner also appears to attempt to litigate in this court the validity
> of many of his disciplinaries, under the guise of their use in
> determining his suitability for parole.  Petitioner, however, should
> have exhausted his administrative remedies with regard to each
> disciplinary that he wishes to dispute, and filed timely individual
> habeas petitions to directly challenge the disciplinary finding after
> exhausting those remedies.   This is not the proper forum for
> attempting to relitigate guilt, without going the direct route
> (citations omitted).

19   (ECF No. 10-8 at 49-50.)

20    As noted by the Sacramento County Superior Court, the record reflects that the Board

21   panel received the written "rebuttal" filed by petitioner in advance of his parole hearing, and that

22   the panel was aware of petitioner's prison disciplinary history, including the fact that several of

23   his disciplinary convictions had subsequently been invalidated.  Indeed, petitioner acknowledges

24   that both his counsel and the Board panel stated they had received these documents.  (ECF No.

25   10-1 at 17-18, 28.)  As set forth above, the record also reflects that petitioner was given the

26   opportunity to be heard on this issue at his parole hearing and that he explained to the Board

27   panel that some of his disciplinary convictions had been overturned or reversed and should not be

28   /////

1    relied upon to determine his parole eligibility.  Under these circumstances, petitioner was not

2    deprived of his right to be heard at his 2011 parole suitability hearing.

3            In part, petitioner seeks federal habeas relief on the grounds that the Board's 2011

4    decision to deny him parole, and the findings upon which that denial was based, were not

5    supported by sufficient reliable evidence, as required by California law. Specifically, petitioner

6    argues that the Board considered unreliable evidence regarding his prior prison disciplinary

7    convictions, the facts of his crime of conviction, and his own prior statements, to find him

8    unsuitable for parole.  However, under the Supreme Court's decision in Swarthout this federal

9    habeas court may not review by the California courts' application of the "some evidence"

10   standard to state parole decisions.  Swarthout, 131 S. Ct. at 862-63; see also Miller v. Oregon Bd.

11   of Parole and Post-Prison Supervision, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court

12   held in [Swarthout v.] Cooke that in the context of parole eligibility decisions the due process

13   right is procedural, and entitles a prisoner to nothing more than a fair hearing and a statement of

14   reasons for a parole board's decision[.]"); Roberts v. Hartley, 640 F.3d 1042, 1045-46 (9th Cir.

15   2011) (under the decision in Swarthout, California's parole scheme creates no substantive due

16   process rights and any procedural due process requirement is met as long as the state provides an

17   inmate seeking parole with an opportunity to be heard and a statement of the reasons why parole

18   was denied); Pearson, 639 F.3d at 1191 ("While the Court did not define the minimum process

19   required by the Due Process Clause for denial parole under the California system, it made clear

20   that the Clause's requirements were satisfied where the inmates 'were allowed to speak at their

21   parole hearings and to contest the evidence against them, were afforded access to their records in

22   advance, and were notified as to the reasons why parole was denied.'")

23           The federal habeas petition pending before the court in this case also reflects that

24   petitioner was represented by counsel at his 2011 parole suitability hearing.  (Doc. 10-1 at 72.)

25   As described above, the record likewise establishes that at that parole hearing petitioner was

26   given the opportunity to be heard and received a statement of the reasons why parole was denied

27   by the Board panel.  That is all the process that was due petitioner under the U.S. Constitution.

28   Swarthout, 131 S. Ct. 862; see also Miller, 642 F.3d at 716; Roberts, 640 F.3d at 1045-46;

1  Pearson, 639 F.3d at 1191.  Accordingly, petitioner is not entitled to relief with respect to his due

2  process claims.

3  **B.  Ineffective Assistance of Counsel**

4  In his second ground for relief, petitioner claims that the attorney who represented him at

5  his 2011 parole suitability hearing rendered ineffective assistance.  (ECF No. 1 at 21-23, 48-54.)

6  Specifically, petitioner claims that his counsel failed to investigate petitioner's prison disciplinary

7  record, failed to present evidence to the Board to clarify and explain the truth about that

8  disciplinary record, failed to object to the Board's reliance on invalid disciplinary convictions to

9  find petitioner unsuitable for parole, and failed to utilize the information contained in petitioner's

10  written rebuttal to the "comprehensive risk assessment" to show that many of the prior

11  disciplinary convictions were invalid or "not reliable."  (Id. at 21-23.)

12  The Sacramento County Superior Court denied habeas relief as to this claim, reasoning as

13  follows:

14  
15  > Petitioner also claims ineffective assistance of counsel at the parole
> hearing.

16  > Petitioner, however, points to no conduct by counsel that
> constituted ineffective assistance.  To the contrary, counsel was
> professional and set forth competent efforts on petitioner's behalf in

17  > light of petitioner's commitment offenses, in-prison record, and
> admissions of ongoing sexual compulsion made at the hearing

18  > itself.  Petitioner does not set forth or show any effort that counsel
> could have made on his behalf that would have been reasonably

19  > likely to have made a difference in the outcome, requiring denial of
> the claim (Strickland v. Washington (1984) 466 U.S. 668).

20  

21  (ECF No. 10-8 at 51.)

22  Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of

23  counsel because he has failed to establish that the Sixth Amendment right to counsel applies to

24  parole hearings, or that due process requires inmates to be represented by counsel at such

25  hearings.  See Greenholtz, 442 U.S. at 16 (due process is satisfied if the opportunity to be heard is

26  provided and the inmate is given notice of the reasons for the denial of parole); Dorado v. Kerr,

27  454 F.2d 892, 896–97 (9th Cir.1972) (due process does not entitle California state prisoners to

28  counsel at hearings where it is determined whether to grant or deny parole); see also Gagnon v.

15

1    Scarpelli, 411 U.S. 778, 790 (1973) ("the decision as to the need for counsel must be made on a

2    case-by-case basis in the exercise of a sound discretion by the state authority charged with

3    responsibility for administering the probation and parole system"); Morrissey v. Brewer, 408 U.S.

4    471, 489 (1972) (in determining minimum procedural due process guarantees for parole

5    revocation proceeding, the Supreme Court did not "reach or decide the question whether the

6    parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent").

7            Although the California Penal Code provides that a "prisoner shall be entitled to be

8    represented by counsel" at parole consideration hearings, see Cal. Penal Code § 3041.7, the

9    "denial of state-created procedural rights is not cognizable on habeas corpus review unless there

10   is a deprivation of a substantive right protected by the Constitution." Bonin v. Calderon, 59 F.3d

11   815, 842 (9th Cir. 1995). See also Stevenson v. Hedgpeth, No. C 11-1608 LHK (PR), 2011 WL

12   3267936, at *1 (N.D. Cal. July 29, 2011) (concluding that the petitioner was not constitutionally

13   entitled to an attorney at his parole hearing); Troxell v. Horel, No. 07-1583 THE (PR), 2009 WL

14   4885213, at **7–8 (N.D. Cal. Dec.17, 2009) (concluding that there is no "clearly established"

15   federal right to counsel in parole suitability hearings, and therefore, habeas relief is unavailable

16   for an alleged violation of such a right). Without a right to the appointment of counsel, there can

17   be no right to the effective assistance of counsel. Coleman v. Thompson, 501 U.S 722, 752

18   (1991). Accordingly, petitioner is not entitled to federal habeas relief on his claim that his

19   counsel at his 2011 parole suitability hearing rendered ineffective assistance.

20           In any event, even if petitioner had a constitutional right to counsel at his parole hearing

21   his ineffective assistance claim lacks merit. To prevail on such a claim, a petitioner must prove

22   that his attorney performed deficiently and that there is a reasonable probability that, but for

23   counsel's deficient performance, the result of the proceeding would have been different.

24   Strickland v. Washington, 466 U.S. 668, 687–88 (1984). This court has reviewed the record and

25   finds that, even assuming petitioner's counsel performed deficiently as petitioner describes, there

26   is no reasonable probability that counsel's conduct had any negative impact on the Board's

27   ultimate decision to deny parole. As the Sacramento County Superior Court observed in its

28   denial of petitioner's habeas petition:

16

1
2
3
4

> The petition is baseless and is denied. Even petitioner, as well as his counsel, knew at the hearing that petitioner was not suitable for parole and was not going to be found suitable for parole. With the admissions that petitioner made during the hearing itself, it is with near certainty for this court to find that no reasonable parole commissioner would have found petitioner suitable for parole.

5   (ECF No. 10-8 at 51.)  In addition, counsel's purported failure to convince the Board that

6   petitioner's prison disciplinary convictions should not be relied on to find him unsuitable for

7   parole did not prejudice petitioner, because the Board's decision concerning petitioner's

8   suitability for parole was based on criteria set forth in the governing state regulations. <u>See</u> Cal.

9   Code Regs., tit. 15, § 2402.  Thus, even assuming arguendo that the Sixth Amendment right to

10  counsel extends to parole hearings, petitioner would not be entitled to habeas relief because he

11  has not demonstrated that he suffered any prejudice from his counsel's alleged ineffectiveness or

12  that the state courts' rejection of his ineffective assistance claim was contrary to, or an

13  unreasonable application of clearly established federal law as set forth in the Supreme Court's

14  decision in <u>Strickland</u>.

15      For all of these reasons, petitioner is not entitled to federal habeas relief with respect to his

16  ineffective assistance of counsel claim.

17      **C. Ex Post Facto**

18      In the introduction section to his federal habeas petition, petitioner claims that Marsy's

19  Law violates the Ex Post Facto Clause of the United States Constitution.  (ECF No. 1 at 18-19.)

20  Petitioner explains, as he did in state court, that the Board agreed not to apply Marsy's Law to

21  prisoners whose initial parole considerations hearings were scheduled to take place prior to

22  December 15, 2008, the date Marsy's Law was implemented, but were then postponed at the

23  Board's behest.  (<u>Id.</u>)  As noted above, petitioner states that his initial parole suitability hearing

24  was originally scheduled for October 6, 2008, but that he was "forced to postpone it" because a

25  comprehensive risk assessment had not been prepared, "which is the parole Board's duty to

26  arrange the risk assessment/psychological report prior to the initial parole hearing."  (<u>Id.</u> at 19-

27  20.)  Thus, according to petitioner, the Board should not have relied on the provisions of Marsy's

28  Law to defer his next parole consideration hearing for ten years.  (<u>Id.</u> at 18-21.)

1        The Sacramento County Superior Court also rejected this claim on state habeas, reasoning

2    as follows:

3        Petitioner first claims that he should not have had his next parole
    suitability hearing set for no earlier than 10 years from the 2011

4        denied pursuant to Marsy's Law because he had requested a
    postponement of the current hearing before December 15, 2008 so

5        that he could obtain an updated psychological report.  He claims
    that the Board of Parole Hearings had announced that it would not

6        apply this aspect of Marsy's Law in such a circumstance.

7        Petitioner, however, fails to attach reasonably available
    documentary evidence of affidavits to support this claim (In re

8        Harris (1993) 5 Cal.4th 813, 827 fn. 5).  He does attach as Exhibit
    A-2 a document drafted by the Prison law Office, stating that the

9        parole board began implementing the Proposition 9 version of Penal
    Code § 3041.5(b)(3), regarding the scheduling of future parole

10       suitability hearings, "effective December 15, 2008.  However, the
    Board agreed not to apply Proposition 9 at the next hearing for any

11       prisoner who was supposed to have his or her hearing before
    December 15, 2008, but had the hearing postponed by the Board for

12       some reason beyond the prisoner's control, such as needing a new
    psychological report."  The document, however, gives no citation to

13       any authority to support its statement, and it not itself competent
    evidence that the Board, in fact, has adopted such a policy.

14

15       Nor does he show why the 2011 hearing had been postponed for
    three years, since his 2008 request for a postponement was a one-

16       year request.  Indeed, during the parole suitability hearing,
    petitioner admitted that he had twice requested postponements of

17       the 2011 hearing because he needed to clean up his disciplinaries, a
    reason completely independent of a need for a new psychological

18       report; further, these requests inferable occurred after the initial
    one-year postponement request was made, and inferably well after

19       December 15, 2008.

20       For these reasons, the claim fails.

21   (ECF No. 10-8 at 49.)

22       Petitioner is not entitled to federal habeas relief on his claim that his constitutional rights

23   were violated by the Board's refusal to comply with its own policy, if any, not to apply Marsy's

24   Law to prisoners in his situation.  First, it is not clear from the record that petitioner's original

25   hearing date was postponed because of circumstances outside of his control.  On the contrary, it

26   appears that petitioner himself may well have requested a postponement of that hearing.  (See id.

27   at 41; ECF No. 10-1 at 82; ECF No. 10-3 at 10.)  In any event, whether the Board violated its own

28   policy with regard to when it would apply the provisions of Marsy's Law to parole suitability

18

1  hearings does not state a claim for a violation of the federal constitution but rather is a matter of

2  state law or Board policy interpretation which is not cognizable in this federal habeas proceeding.

3  Park, 202 F.3d at 1149.

4       To the extent petitioner is arguing, generally, that the parole deferral periods imposed

5  under Marsy's Law violated the Ex Post Facto Clause, the undersigned finds that this claim must

6  be dismissed in this action because petitioner is a member of the class in Gilman v. Fisher, No.

7  CIV S-05-830 LKK GGH (Gilman), a class action lawsuit which addresses this issue.

8       The Constitution provides that "No State shall . . . pass any . . . ex post facto Law."  U.S.

9  Const. art. I, § 10.  A law violates the Ex Post Facto Clause of the United States Constitution if it:

10  (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's

11  punishment greater than when the crime was committed; or (3) deprives a person of a defense

12  available at the time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52 (1990).

13  The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or

14  increase the punishment for criminal acts."  Himes v. Thompson, 336 F.3d 848, 854 (9th Cir.

15  2003) (quoting Souch v. Schaivo, 289 F.3d 616, 620 (9th Cir. 2002)).  See also Cal. Dep't of

16  Corr. v. Morales, 514 U.S. 499, 504 (1995).  The Ex Post Facto Clause is also violated if:  (1)

17  state regulations have been applied retroactively; and (2) the new regulations have created a

18  "sufficient risk" of increasing the punishment attached to the crimes.  Himes, 336 F.3d at 854.

19  The retroactive application of a change in state parole procedures violates ex post facto only if

20  there exists a "significant risk" that such application will increase the punishment for the crime.

21  See Garner v. Jones, 529 U.S. 244, 259 (2000).

22       Petitioner was convicted and sentenced to twenty-eight years to life in prison in 1987,

23  twenty-one years prior to the passage of Marsy's Law in November 2008.  Marsy's Law amended

24  California law governing parole suitability hearing deferral periods.  See Gilman v. Davis, 690 F.

25  Supp.2d 1105, 1109–13 (E.D. Cal. 2010) (granting plaintiffs' motion for a preliminary injunction

26  enjoining enforcement of Marsy's Law, to the extent it amended former California Penal Code §

27  3041.5(b)(2)(A)), rev'd sub nom. Gilman v. Schwarzenegger, 638 F.3d 1101 (9th Cir. 2011).

28  Prior to the enactment of Marsy's Law, the Board deferred subsequent parole suitability hearings

1   with respect to indeterminately-sentenced inmates for one year unless the Board determined it

2   was unreasonable to expect that parole could be granted the following year.  If that determination

3   was made, the Board could then defer the inmate's subsequent parole suitability hearing for up to

4   five years.  See Cal. Pen. Code § 3041.5(b)(2) (2008).  Marsy's Law, which applied to petitioner

5   at the time of his 2010 parole suitability hearing, amended § 3041.5(b)(2) to impose a minimum

6   deferral period for subsequent parole suitability hearings of three years, and to authorize the

7   Board's deferral of a subsequent parole hearing for up to seven, ten, or fifteen years.  Id. §

8   3041.5(b)(3) (2010).

9           One of the claims presented by the plaintiffs in the Gilman class action is that the

10   amendments to § 3041.5(b)(2) regarding parole deferral periods imposed under Marsy's Law

11   violates the Ex Post Facto Clause because "when applied retroactively, [they] create a significant

12   risk of increasing the measure of punishment attached to the original crime."  (Gilman, ECF No.

13   154–1 at 13 (Fourth Amended/Supplemental Complaint), ECF No. 183 (Mar. 4, 2009 Order

14   granting plaintiffs' motion for leave to file a Fourth Amended/Supplemental Complaint.))  With

15   respect to this particular Ex Post Facto claim, the class in Gilman is comprised of "all California

16   state prisoners who have been sentenced to a life term with possibility of parole for an offense

17   that occurred before November 4, 2008."  (Gilman, ECF No. 340 (Apr. 25, 2011 Order amending

18   definition of class.))  The Gilman plaintiffs seek declaratory and injunctive relief, including a

19   permanent injunction enjoining the Board from enforcing the amendments to § 3041.5(b) enacted

20   by Marsy's Law and requiring that the Board conduct a new parole consideration hearing for each

21   member of the class.  (Gilman, ECF No. 154–1 (Fourth Amended/Supplemental Complaint) at

22   14.)

23           In a class action for injunctive relief certified under Rule 23(b)(2) of the Federal Rules of

24   Civil Procedure a court may, but is not required to, permit members to opt-out of the suit.

25   Crawford v. Honig, 37 F.3d 485, 487 n.2 (9th Cir. 1994).  In certifying the Gilman class, the

26   district court found that the plaintiffs had satisfied the requirement of Rules 23(a) and 23(b)(2)

27   that "the party opposing the class has acted or refused to act on grounds that apply generally to

28   the class, so that final injunctive relief or corresponding declaratory relief is appropriate

1   respecting the class as a whole." (See Gilman, ECF No. 182 (Mar. 4, 2009 Order certifying class

2   pursuant to Fed. R. Civ. P. 23(b)(2), ECF No. 257 (June 3, 2010 Ninth Circuit Court of Appeals

3   Memorandum affirming district court's order certifying class.))  According to the district court in

4   Gilman, the members of the class "may not maintain a separate, individual suit for equitable relief

5   involving the same subject matter of the class action."  (Gilman, ECF No. 296 (Dec.10, 2010

6   Order) at 2; see also ECF No. 278 (Oct. 1, 2010 Order), ECF No. 276 (Sept. 28, 2010 Order),

7   ECF No. 274 (Sept. 23, 2010 Order.))

8           There is no evidence before the court at this time in this habeas action suggesting that

9   petitioner has requested permission to opt out of the Gilman class action lawsuit.  Rather,

10   petitioner alleges he is a California state prisoner who was sentenced to a life term in state prison

11   with the possibility of parole for an offense that occurred before November 4, 2008.  (ECF No. 1

12   at 1.)  Accepting petitioner's allegations as true, he is a member of the Gilman class.  Petitioner in

13   this habeas action alleges that Marsy's Law violates the Ex Post Facto Clause.  Petitioner asks the

14   court to issue a writ of habeas corpus.  However, even if the court found that the Board's ten-year

15   deferral of petitioner's next parole suitability hearing in 2011 violated the Ex Post Facto Clause, it

16   would not entitle petitioner to release on parole.  Because petitioner's Ex Post Facto claim

17   concerns only the timing of his next parole suitability hearing, success on that claim would not

18   necessarily result in a determination that petitioner is suitable for release from custody on parole.

19   Rather, petitioner's equitable relief would be limited to an order directing the Board to conduct a

20   new parole suitability hearing and enjoining the Board from enforcing against petitioner any

21   provisions of Marsy's Law found to be unconstitutional.  This is the same relief petitioner would

22   be entitled to as a member of the pending Gilman class action.  (See Gilman, ECF No. 154–1

23   (Fourth Amended/Supplemental Complaint) at 14.)

24           Therefore, it appears clear that petitioner's rights will be fully protected by his

25   participation as a class member in the Gilman case.  Accordingly, the undersigned recommends

26   that petitioner's Ex Post Facto claim presented by him in this federal habeas action be dismissed

27   without prejudice to any relief that may be available to him as a member of the Gilman class.  See

28   Crawford v. Bell, 599 F.2d 890, 892 (9th Cir. 1979) ("A court may choose not to exercise its

1 jurisdiction when another court having jurisdiction over the same matter has entertained it and

2 can achieve the same result."); see also McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991)

3 ("Individual suits for injunctive and equitable relief from alleged unconstitutional prison

4 conditions cannot be brought where there is an existing class action."); Gillespie v. Crawford, 858

5 F.2d 1101, 1103 (5th Cir.1988) ("To allow individual suits would interfere with the orderly

6 administration of the class action and risk inconsistent adjudications."); Johnson v. Parole Board,

7 No. CV 12–3756–GHK (CW), 2012 WL 3104867, at * (C.D. Cal. June 26, 2012) (recommending

8 dismissal of petitioner's Ex Post Facto challenge to Proposition 9 "without prejudice in light of

9 the ongoing Gilman class action.") (and cases cited therein), report and recommendation adopted

10 by 2012 WL 3104863 (C.D. Cal. July 25, 2012).

11 **V.  Conclusion**

12     Accordingly, for all the reasons set forth above, IT IS HEREBY RECOMMENDED that:

13     1.  Federal habeas relief be denied as to petitioner's due process claim, his ineffective

14 assistance of counsel claim, and his claim that the Board violated its own policy in deferring his

15 next parole suitability hearing for ten years; and

16     2.  Petitioner's claim that his rights under the Ex Post Facto Clause were violated by the

17 Board's 2011 decision to defer his next parole consideration hearing for a period of ten

18 years be dismissed without prejudice to any relief that may be available to petitioner as a member

19 of the class in Gilman v. Fisher, 05-0830 LKK GGH P.

20     These findings and recommendations are submitted to the United States District Judge

21 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

22 after being served with these findings and recommendations, any party may file written

23 objections with the court and serve a copy on all parties.  Such a document should be captioned

24 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

25 shall be served and filed within fourteen days after service of the objections.  Failure to file

26 objections within the specified time may waive the right to appeal the District Court's order.

27 Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

28 1991).  In his objections petitioner may address whether a certificate of appealability should issue

1   in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

2   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

3   enters a final order adverse to the applicant).

4   Dated:  August 7, 2014

5

6                                                   _____
                                                    DALE A. DROZD
7                                                   UNITED STATES MAGISTRATE JUDGE

8   DAD:8:
    Hardney754.hc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    23